1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   RODNEY WOMACK,

11          Plaintiff,                    No. 2:11-cv-1030 MCE EFB P

12          vs.

13   TIM VIRGA, et al.,

14          Defendants.                   FINDINGS AND RECOMMENDATIONS

15   _____/

16          Plaintiff is a state prisoner proceeding without counsel in an action brought under 42

17   U.S.C. § 1983.  This case proceeds on plaintiff's Eighth Amendment claims pertaining to his

18   conditions of confinement and his claim that defendants were deliberately indifferent to his

19   serious mental health needs when they prevented him from being single-celled, causing him to

20   suffer significant emotional and psychological distress.  Pending before the court are the

21   following motions: (1) defendants' Jochim, Stabbe, Sullivan, Van Dusseldorp, Virga, and

22   Worrell's motion for summary judgment; (2) plaintiff's Rule 56(d) request that he be provided

23   discovery prior to ruling on the motion for summary judgment; (3) plaintiff's motion to amend

24   his opposition to defendants' summary judgment motion; (4) plaintiff's motion to reinstate

25   allegations against dismissed defendant McElroy; and (5) plaintiff's motions for injunctive relief.

26   ////

1

1  For the reasons stated below, it is recommended that defendants' motion be granted and

2  plaintiff's motions be denied.

3  **I.      Plaintiff's Allegations**

4            On December 24, 2009, plaintiff told his treating clinician, Dr. Steenman, that when he

5  was confined to California State Prison-Corcoran (CSP-Corcoran) in 1989-1991, there were

6  "gladiator wars," and that officers at that prison had "used tasers" on him and had put inmates in

7  his cell who "sexually assaulted" him.  Pl.'s Apr. 18, 2011 Mot. for Prel. Inj. ("MPI") ("Dckt.

8  No. 1"), Ex. B.  Plaintiff claimed he had been housed with fifteen cellmates and "felt

9  vulnerable."  *Id.*  Dr. Steenman found plaintiff's report of past trauma "credible" and determined

10 it was "likely" that plaintiff was experiencing post traumatic stress disorder (PTSD).  *Id.*  Dr.

11 Steenman recommended a single-cell for one year, "if custody agreed," so that plaintiff would

12 not have to spend his life term in administrative segregation for refusing cellmates.  *Id.*

13 Defendant Warden Virga allegedly "reviewed all documents and conversed with [plaintiff] and

14 Steenman."  *Id.* at 4.  Defendant Virga allegedly agreed to grant plaintiff one-year of single cell

15 status.  *Id.*

16          On October 28, 2009, before the one-year had expired, a prison official allegedly

17 informed plaintiff that he was eligible for double-celling.  *Id.* at 5.  The official allegedly told

18 plaintiff that he could either accept a cellmate or go to administrative segregation.  *Id.*  When

19 plaintiff objected, the prison official allegedly informed plaintiff that "the doctors don't run the

20 [ ] prison" and that records indicated that plaintiff was eligible for double-celling.  *Id.*  Plaintiff

21 refused double-celling and was placed in administrative segregation and the resulting loss of

22 privileges.  *Id.* at 5, 9-10.

23          While in administrative segregation, defendant psychologist Sullivan was assigned to be

24 plaintiff's mental health clinician.  *Id.*  Plaintiff allegedly asked her to obtain copies of Dr.

25 Steenman's diagnosis and single-cell recommendation to assist plaintiff in getting released from

26 administrative segregation.  *Id.* at 4-5.  Defendant Sullivan allegedly refused, and told plaintiff

1   she would not recommend single-cell status.  *Id.* at 5.  Subsequently, plaintiff filed an inmate

2   appeal against Sullivan and she was removed as his clinician psychologist.  *Id.*

3          Plaintiff claims he also filed an inmate appeal requesting that his single-cell status be

4   reinstated.  *Id.* at 8.  Defendant psychologist Worrell allegedly assigned the appeal to defendant

5   psychologist Stabbe.  *Id.*  Defendant Stabbe allegedly reviewed the December 2009 single-cell

6   recommendation, but denied plaintiff's appeal without mentioning it.  *Id.*

7          Plaintiff allegedly remained in administrative segregation, where he repeatedly received

8   disciplinary actions for refusing cellmates.  *Id.* at 9.  He claims that the disciplinary actions were

9   improper because defendant Jochim had falsely stated that compatible cellmates were available

10  to double-cell with plaintiff.  *Id.*  As a result of the numerous disciplinary actions, plaintiff

11  allegedly lost certain privileges, such as television, visits, and good time credits.  *Id.* at 9.  He

12  claims that defendant Van Dusseldorp also denied him toiletries and writing materials.  *Id.* at 10.

13         Plaintiff contends the real reason he was asked to accept a cellmate was because of

14  limited bed space in the prison.  *Id.* at 5.  He believes that the defendants have conspired against

15  him to deny him single-cell status and to harass him for refusing a cellmate, just for financial

16  gain.  *Id.* at 6-8.

17         According to plaintiff, he personally informed each of the defendants that if they attempt

18  to force him to accept a cellmate, he will "unquestionably kill any cellmate before the cellmate

19  has the opportunity to kill plaintiff," and that his past experiences "honestly warrant[ ] single cell

20  status."  Pl.'s May 6, 2011 Compl. ("Dckt. No. 8") at 12.  Plaintiff requests injunctive relief in

21  the form of an order allowing him to be single-celled indefinitely.  *Id.* § V.

22         This action proceeds on plaintiff's claim that defendants Jochim, Stabbe, Sullivan, Van

23  Dusseldorp, Virga, and Worrell ("defendants"), violated plaintiff's Eighth Amendment right to

24  be free from cruel and unusual punishment by refusing to permit him to be housed in a single

25  cell for the duration of his incarceration, causing him to suffer significant emotional and

26  ////

1   psychological distress.[1]  Plaintiff also claims that defendants subjected him to cruel and

2   unusual punishment by wrongfully issuing disciplinary write-ups for his refusal to accept a

3   cellmate, thereby retaining him in administrative segregation and revoking his privileges.  *See*

4   Dckt. No. 1; Pl.'s May 6, 2011 Affidavit in Supp. of MPI ("Dckt. No. 7"); Dckt. No. 8.  *See also*

5   May 21, 2011 28 U.S.C. § 1915A Screening Order ("Dckt. No. 11").

6   **II.     Defendants' Motion for Summary Judgment**

7          Defendants' motion, originally filed on February 17, 2012, was re-filed and re-served on

8   August 3, 2012, in accordance with the court's July 25, 2012 order.[2]  *See* Dckt. No. 65 (ordering

9   defendants to re-serve the motion along with the notice to plaintiff required by *Woods v. Carey*,

10  684 F.3d 934 (9th Cir. 2012) and allowing plaintiff to either rely on his original opposition or

11  file an amended opposition); Dckt. No. 66.  Plaintiff filed an amended opposition on August 14,

12  2012.[3]  Dckt. No. 69.

13  **A.     Plaintiff's Rule 56(d) Affidavit**

14         After defendants moved for summary judgment, plaintiff filed a request to defer ruling on

15  the summary judgment motion pending further discovery pursuant to Rule 56(d) of the Federal

16  Rules of Civil Procedure.  Dckt. No. 73.  Rule 56(d) permits a party opposing a motion for

17  summary judgment to request an order deferring the time to respond to the motion and

18  permitting that party to conduct additional discovery upon an adequate factual showing.  *See*

19  Fed. R. Civ. P. 56(d) (requiring party making such request to show "by *affidavit or declaration*

20  that, for *specified reasons*, it cannot present *facts essential* to justify its opposition.").  A Rule

21

22         [1] Plaintiff also named McElroy as a defendant in this action, but voluntarily dismissed
23  defendant McElroy on July 18, 2011.  Dckt. No. 18.

24         [2] Defendants' accompanying request for judicial notice (Dckt. No. 67) is granted.

25         [3] Plaintiff's amended opposition supercedes his original opposition (Dckt. No. 50).
    Accordingly, the court declines to address the arguments raised therein.  The court has, however,
26  reviewed the arguments and exhibits submitted with the original opposition, and notes that they
    would not change the outcome of these findings and recommendations.

4

56(d) affidavit must identify "the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." *Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006). A Rule 56(d) affidavit must also identify "some basis for believing that the information sought actually exists." *Blough v. Holland Realty, Inc.*, 574 F.3d 1084, 1091 n.5 (9th Cir. 2009).

Plaintiff claims that defendants have withheld relevant documents that he believes will "strengthen" his opposition to defendants' motion. Dckt. No. 73 at 3-4, 5. Specifically, plaintiff seeks: (1) Dr. Hewette' June 20, 2007 mental health evaluation, (2) Dr. Delgado's 2009 mental health evaluation, (3) the December 24, 2009 chrono for 365 days of single-cell status, (4) five disciplinary actions (referred to by plaintiff as "write ups") taken against him for refusing a cellmate during the months of July through December 2011, and (5) mental health records from July through December 2011. *Id.* ¶¶ 7, 9, 10-12. According to plaintiff, the more disciplinary actions he can produce based upon his refusal to accept a cellmate, the "stronger" his claims will be. *Id.* at 3-4. Plaintiff also claims that without all of his medical records, he cannot demonstrate that his significant mental health issues make him unsuitable for double-celling. *Id.* at 4. In opposition, defendants either produce the record requested by plaintiff or submit a declaration explaining that the requested record does not exist. *See* Dckt. No. 76, Defs.' Exs. A-C.

*Mental Health Records*: Defendants produce Dr. Hewette's June 20, 2007 mental health evaluation, Dr. Delgado's 2009 mental health evaluation, and mental health records from July through December 2011. Dckt. No. 76, Defs.' Ex. B, Attach. 1; Ex. C, Attach. 1 & 2. None of these records demonstrate that plaintiff is not a suitable candidate for double-celling. Delgado's report of May 12, 2009 notes that the plaintiff "is currently in ASU for refusal to take a celly, which has reportedly been an ongoing issue for him with multiple 602 due to his concern for his own safety and the safety of others." Dckt. No. 76-3, p. 17 (Ex. C, Attach. 2). But the report in no way asserts that plaintiff's medical or mental condition prevents him from having a cellmate.

1  Hoffman's report of November 30, 2011 similarly notes plaintiff's safety concern that he not be

2  double-celled with a cellmate and appears to reflect an assessment of whether plaintiff's mental

3  health contributed to his rule violation report (referred to as "RVR") for refusal to accept a

4  cellmate.  Dr. Hoffman, a Senior Psychologists, concluded that "Mental disorder did not

5  contribute to the behavior described in this RVR, although mental health factors are potentially

6  involved.  It is clear that his actions were willful, with full awareness of the reality and context of

7  his behavior."  Dckt. No. 76-2, p. 13 (Ex. B, Attach. 1).

8          In his reply, plaintiff claims that the Hewette mental health evaluation produced by

9  defendants is "fabricated" because not every page includes plaintiff's name, Hewette's signature,

10  and a confidentiality notice.  Dckt. No. 78 at 4-5.  According to plaintiff, this demonstrates that

11  defendants are withholding or destroying documents.  *Id.*  Plaintiff's argument lacks merit.  The

12  pages of the evaluation referred to by plaintiff are boilerplate forms that do not require the

13  information listed by plaintiff.  Plaintiff has not called into question the authenticity of these

14  records.  Moreover, plaintiff advances no argument as to what the allegedly withheld documents

15  would reveal, or how they would preclude summary judgment.

16          Plaintiff also claims that defendants intentionally withheld or destroyed three pages from

17  Dr. Delgado's 2009 mental health evaluation because they lend credibility to plaintiff's need for

18  single-cell status.  Dckt. No. 78 at 4, 6.  Plaintiff offers no specific facts regarding what

19  information would be contained in the allegedly withheld pages.  Nor does the text of Delgado's

20  report reflect that something is missing from the narrative discussion.  There are no sentences or

21  phrases that are abruptly cutoff or incomplete text or any other indication that Delgado wrote

22  more than what is shown in the exhibit.  Moreover, defendants explained when they submitted

23  the Delgado evaluation, that pages 2, 4, and 6 were blank and therefore, not reproduced for the

24  court.  Dckt. No. 76, Defs.' Ex. C.  Plaintiff's contention that certain documents were withheld

25  because they favor his position is based on mere speculation.

26  ////

1    In responding to plaintiff's Rule 56(d) request, defendants also submitted plaintiff's

2    Interdisciplinary Treatment Team mental health treatment plans dated July 26, 2011 and October

3    18, 2011, and his mental health progress notes for November 7, 10, 15, 17, 21, 24, 28, 30 and

4    December 1, 5, 8, 13, 15, 22, 27, 31, 2011.  Dckt. No. 76, Ex. B, Attach. 1.  According to

5    plaintiff, defendants failed to produce all of Dr. Hillary's progress notes.  Dckt. No. 78 at 3.

6    Contrary to plaintiff's contentions, however, he has not "unquestionably proven that defendants

7    are withholding or ha[ve] destroyed" the progress notes.  Dckt. No. 78 at 4.  The July 26 and

8    October 18 mental health treatment plans suggest that the purportedly "destroyed" progress notes

9    never existed.  Dr. Hillary's July 26, 2011 report notes that plaintiff's participation in his mental

10   health treatment was "minimal" and that plaintiff had made no progress in participating in

11   weekly one-on-one sessions.  Dckt. No. 76, Ex. B, Attach. 1 at 48.  The October 18, 2011 report

12   states that given plaintiff's "refusals to attend 1:1 sessions, it is difficult to assess his mood

13   symptoms."  *Id.* at 41.  These notes indicate that plaintiff was not fully participating in his mental

14   health treatment, and provide an alternate explanation for the absence of progress notes for

15   August through October 2011.  Thus, plaintiff has not shown that the information sought actually

16   exists.  Moreover, plaintiff fails to describe the purported contents of the progress notes or

17   otherwise explain how such notes would preclude summary judgment.

18   *Disciplinary Actions*:  Defendants submit the declaration of J. Polich, a California

19   Department of Corrections and Rehabilitation ("CDCR")  Correctional Counselor at CSP-SAC,

20   who states that there are no disciplinary actions for the months of August, September, and

21   December 2011 in plaintiff's central file.  Dckt. No. 76, Ex. A ¶ 3(a).  Defendants submit copies

22   of disciplinary actions from July, October and November 2011.  *Id.* Ex. A, Attach. 1.  None of

23   these disciplinary actions were taken by any defendant in this action.  Plaintiff maintains that

24   defendants are withholding disciplinary write-ups for plaintiff's refusal to accept a cellmate from

25   the months of August, September, and December of 2011.  Dckt. No. 78 at 2.  Plaintiff fails to

26   ////

1  demonstrate that these documents exist.  Assuming they do exist, plaintiff fails to demonstrate

2  how they would preclude summary judgment.

3      *Single-Cell Chrono for 365 Days*:  As discussed above, Dr. Steenman recommended that

4  plaintiff be single-celled for one year.  Plaintiff contends there should be a chrono reflecting Dr.

5  Steenman's recommendation.  Polich states that there is no such chrono in plaintiff's central file

6  or medical records.  Dckt. No. 76, Defs.' Ex. A ¶ 3(b).  More to the point, the matter of

7  Steenman's recommendation is undisputed and ultimately immaterial.  As discussed below, the

8  facts demonstrate that the Warden was responsible for inmate housing decisions, and that

9  defendant Warden Virga considered Dr. Steenman's recommendation when making his decision

10  to single-cell plaintiff for only 30 days.  Assuming Dr. Steenman had prepared a chrono to go

11  with his one-year single-cell recommendation, plaintiff fails to demonstrate how it would

12  preclude summary judgment.

13      In sum, plaintiff fails to identify particular facts upon which he would rely to demonstrate

14  that he should not be double-celled or to otherwise oppose defendants' motion for summary

15  judgment.  Because plaintiff does not provide any basis for believing that additional documents

16  exist and have wrongfully been withheld from him, and because he fails to explain why any

17  specific fact or facts within those records would help him defeat defendants' motion, his Rule

18  56(d) request must be denied.  *See Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d 1439,

19  1443 (9th Cir. 1986) ("Rule 56(f) requires affidavits setting forth the particular facts expected

20  from the movant's discovery. Failure to comply with the requirements of Rule 56(f) is a proper

21  ground for denying discovery and proceeding to summary judgment.").

22  **B.    Plaintiff's Motion to Amend his Opposition to Defendants' MSJ**

23      On October 16, 2012, plaintiff filed an "amended response in opposition to defendants'

24  motion for summary judgment."  Dckt. No. 74.  Plaintiff asks that he be allowed to amend his

25  opposition to include his declaration, stating that since October 2010, he has received 28

26  disciplinary actions for refusing a cellmate, causing him to remain housed in administrative

8

1  segregation for two years.  *See id.*  Defendants oppose the request because "[t]here is no dispute

2  that [plaintiff] has been disciplined for repeated refusal to comply with orders that he cell with

3  another inmate, and that he has been retained in administrative segregation for those refusals."

4  Dckt. No. 76 at 6.  Defendants contend that plaintiff "does not need to pyramid every

5  disciplinary action he has received to prove that fact, even though he believes that his case will

6  be 'stronger' if he does."  *Id.*

7          Plaintiff has had both the time and the opportunity to present all of his arguments on

8  summary judgment in a single filing.  Defendants' motion for summary judgment was originally

9  filed in February of 2012.  Dckt. No. 41.  Plaintiff originally opposed the motion on March 15,

10  2012.  Dckt. No. 50.  After the court denied defendants' motion without prejudice, the court

11  granted plaintiff the opportunity to file an amended opposition.  Dckt. No. 65.  After defendants

12  re-filed their motion on August 3, 2012, plaintiff filed an amended opposition.  Dckt. No. 69.

13  Plaintiff offers no good cause for his delay in advancing the arguments raised in his pending

14  motion to amend.  Nonetheless, the court has considered all of the arguments that plaintiff has

15  asserted in his multiple filings.  To the extent plaintiff has received additional disciplinary

16  actions since opposing defendants' motion on August 14, 2012, that evidence is superfluous.  It

17  is clear from the existing record that plaintiff has repeatedly been disciplined and confined to

18  administrative segregation for his refusal to accept a cellmate.  For these reasons, plaintiff's

19  request to submit yet another opposition is denied.

20      **C.      Summary Judgment Standards**

21          Summary judgment is appropriate when there is "no genuine dispute as to any material

22  fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary

23  judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant

24  to the determination of the issues in the case, or in which there is insufficient evidence for a jury

25  to determine those facts in favor of the nonmovant.  *Crawford-El v. Britton*, 523 U.S. 574, 600

26  (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v.*

9

1   *U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994).  At bottom, a summary judgment

2   motion asks whether the evidence presents a sufficient disagreement to require submission to a

3   jury.

4          The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims

5   or defenses.  *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thus, the rule functions to

6   "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

7   trial.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)

8   (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).  Procedurally,

9   under summary judgment practice, the moving party bears the initial responsibility of presenting

10  the basis for its motion and identifying those portions of the record, together with affidavits, if

11  any, that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477

12  U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  If the moving

13  party meets its burden with a properly supported motion, the burden then shifts to the opposing

14  party to present specific facts that show there is a genuine issue for trial.  Fed. R. Civ. P. 56(e);

15  *Anderson.*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

16         A clear focus on where the burden of proof lies as to the factual issue in question is

17  crucial to summary judgment procedures.  Depending on which party bears that burden, the party

18  seeking summary judgment does not necessarily need to submit any evidence of its own.  When

19  the opposing party would have the burden of proof on a dispositive issue at trial, the moving

20  party need not produce evidence which negates the opponent's claim.  *See e.g., Lujan v. National

21  Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  Rather, the moving party need only point to matters

22  which demonstrate the absence of a genuine material factual issue.  *See Celotex*, 477 U.S. at 323-

23  24 (1986). ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive

24  issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

25  depositions, answers to interrogatories, and admissions on file.'").  Indeed, summary judgment

26  should be entered, after adequate time for discovery and upon motion, against a party who fails

1    to make a showing sufficient to establish the existence of an element essential to that party's

2    case, and on which that party will bear the burden of proof at trial.  *See id.* at 322.  In such a

3    circumstance, summary judgment must be granted, "so long as whatever is before the district

4    court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

5    satisfied."  *Id.* at 323.

6          To defeat summary judgment the opposing party must establish a genuine dispute as to a

7    material issue of fact.  This entails two requirements.  First, the dispute must be over a fact(s)

8    that is material, i.e., one that makes a difference in the outcome of the case.  *Anderson*, 477 U.S.

9    at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing

10   law will properly preclude the entry of summary judgment.").  Whether a factual dispute is

11   material is determined by the substantive law applicable for the claim in question.  *Id.*  If the

12   opposing party is unable to produce evidence sufficient to establish a required element of its

13   claim that party fails in opposing summary judgment.  "[A] complete failure of proof concerning

14   an essential element of the nonmoving party's case necessarily renders all other facts

15   immaterial."  *Celotex*, 477 U.S. at 322.

16         Second, the dispute must be genuine.  In determining whether a factual dispute is genuine

17   the court must again focus on which party bears the burden of proof on the factual issue in

18   question.  Where the party opposing summary judgment would bear the burden of proof at trial

19   on the factual issue in dispute, that party must produce evidence sufficient to support its factual

20   claim.  Conclusory allegations, unsupported by evidence are insufficient to defeat the motion.

21   *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989).  Rather, the opposing party must, by affidavit

22   or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue

23   for trial.  *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076.  More significantly, to

24   demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such

25   that a fair-minded jury "could return a verdict for [him] on the evidence presented."  *Anderson*,

26   477 U.S. at 248, 252.  Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility.  It believes the opposing party's evidence, and draws inferences most favorably for the opposing party.  *See id.* at 249, 255; *Matsushita*, 475 U.S. at 587.  Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences.  *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322).  If reasonable minds could differ on material facts at issue, summary judgment is inappropriate.  *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).  On the other hand,"[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted); *Celotex.*, 477 U.S. at 323 (If the evidence presented and any reasonable inferences that might be drawn from it could not support a judgment in favor of the opposing party, there is no genuine issue).  Thus, Rule 56 serves to screen cases lacking any genuine dispute over an issue that is determinative of the outcome of the case.

Concurrent with the instant motion, defendants advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Dckt. No. 68; *see Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

### D.   Discussion

Considering the record before the court, there is no evidence creating a genuine dispute as to whether defendants were deliberately indifferent to plaintiff's safety or medical needs by requiring that he accept a cellmate.

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement.  *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006).  Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety.  *Johnson v. Lewis*, 217 F.3d 726, 731 (9th

Cir. 2000).   Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  To succeed on such a claim, a prisoner must show that (1) the defendant's conduct deprived him of the minimal civilized measure of life's necessities and (2) that the defendant acted with deliberate indifference to the prisoner's health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  That is, the defendant must have known that the inmate faced a substantial risk of serious harm, and must have also disregarded that risk by failing to take reasonable measures to abate it.  *Id.* at 847.

   To succeed on an Eighth Amendment claim predicated on the denial of medical care, a plaintiff must establish that he had a serious medical need and that the defendant's response to that need was deliberately indifferent.  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

   As to the issue of double-celling, inmates do not have a constitutional right to be incarcerated at a particular correctional facility or in a particular cell or unit within a facility. *See Meachum v. Fano*, 427 U.S. 215, 224-25 (1976).  The denial of single cell status by itself does not rise to the level of an Eighth Amendment violation.  *See Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).  In evaluating plaintiff's challenge to the cellmate requirement imposed here the court is mindful that "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government."  *Turner v. Safley*, 482 U.S. 78, 84-85 (1987).  For this reason, the court must afford deference to the administrative decisions of prison officials.  *Id.*

////

////

////

Here, while he was in custody at California State Prison, Sacramento (CSP-SAC), Dckt. No. 8 at 4:7-11, plaintiff was a participant in prison's Mental Health Services Delivery System.[4] He has been diagnosed with various mental health-related conditions, including a serious mood disorder.  MSJ, Sullivan Decl. at ¶ 4; Worrell Decl. at ¶ 3; Stabbe Decl. at ¶ 5.

On Friday, February 13, 2009, plaintiff received a Rules Violation Report and was retained in administrative segregation after submitting an inmate appeal stating that he would stab any potential cellmate.  Dckt. No. 69, Pl.'s Ex. A.  In a related mental health evaluation, plaintiff reported that he had been set up and ambushed by correctional officers in "gladiator fights" while incarcerated at CSP-Corcoran.  Dckt. No. 40, Pl.'s Ex. E.  Plaintiff stated he would stab a cellmate based on his belief that the cellmate was "working for the police."  *Id.*  The clinician noted plaintiff's fearfulness, but concluded that a mental disorder did not contribute to the behavior resulting in the rules violation.  *Id.*

A May 12, 2009 mental health evaluation indicates that plaintiff remained housed in administrative segregation because he continued to refuse a cellmate out of concern for his own safety and the safety of others.  Dckt. No. 76, Ex. C, Attach. 2.

On December 24, 2009, plaintiff told his treating clinician, Dr. Steenman that when he was confined to CSP-Corcoran in 1989-1991, there were "gladiator wars," and that officers at that prison had "used tasers" on him and had put inmates in his cell who "sexually assaulted" him.  Dckt. No. 76, Defs.' Ex. A, Polich Decl., Attach. 2 at 0564.  Plaintiff claimed he had been housed with fifteen cellmates and "felt vulnerable."  *Id.*  Dr. Steenman found plaintiff's report of past trauma "credible" and determined it was "likely" that plaintiff was experiencing PTSD.  *Id.*

////

---

[4] Each of the defendants were CDCR employees working at CSP-SAC: Defendant Virga as the Warden; Defendants Jochim and Van Dusseldorp as correctional officers assigned to the prison's Administrative Segregation housing unit (Ad-Seg); and Defendants Sullivan, Worrell and Stabbe as clinical psychologists.  Dckt. No. 8, § III (A), (B); MSJ, Virga Decl. at ¶ 1; Jochim Decl. at ¶ 1; Van Dusseldorp Decl. at ¶¶ 1, 2; Sullivan Decl. at ¶ 1; Worrell Decl. at ¶ 1; Stabbe Decl. at ¶1.

14

1   Dr. Steenman recommended a single cell for one year, "if custody agreed," so that plaintiff

2   would not have to spend his life term in administrative segregation for refusing cellmates. *Id.* at

3   0563-0564. Plaintiff's mental health Interdisciplinary Treatment Team agreed with this

4   recommendation. *Id.* at 0563.

5        The role of CDCR mental health staff members regarding housing and custody-related

6   matters, is consultative, not mandatory. MSJ, Sullivan Decl. at ¶ 12; Worrell Decl. at ¶ 6; Stabbe

7   Decl. at ¶ 7; Macomber Decl. at ¶ 8. Thus, while mental health staff members may, and often

8   do, make recommendations regarding whether an inmate should be single-celled for some period

9   of time, the ultimate authority for making inmate housing-related determinations rests

10  exclusively with the Warden or the Warden's designee. *Id.*

11       On January 6, 2010, an institutional classification committee (ICC), whose members

12  included Acting Warden Virga (defendant) and Dr. Houston, a treating clinician, considered the

13  single-cell recommendation and decided to house plaintiff in a single-cell for thirty days, rather

14  than one year, provided that mental health staff would work with plaintiff and evaluate his

15  further need for a single cell. Dckt. No. 76, Defs.' Ex. A, Polich Decl., Attach. 2 at 0728; MSJ,

16  Virga Decl. ¶ 10. By March 15, 2010, the ICC had cleared plaintiff for double-celling because

17  plaintiff had no history of in-cell violence or predatory behavior. MSJ, Virga Decl., Ex. A.

18       On October 28, 2010, plaintiff was ordered to double-cell. *See* MSJ, Stabbe Decl. ¶ 3,

19  Ex. A (appeal log no. SAC-10-10-12945). Plaintiff refused and as a result, was housed in

20  administrative segregation. *Id.* On November 10, 2010, the ICC agreed that plaintiff should

21  remain double-celled because there was a lack of sufficient documentation to warrant single-cell

22  status. MSJ, Virga Decl. ¶ 11, Ex. C.

23       On November 26, 2010, plaintiff submitted an inmate appeal contending that he was not

24  mentally capable of interacting with a cellmate, and that he should be permitted to remain single-

25  celled during his incarceration. MSJ, Stabbe Decl., Ex. A   After interviewing plaintiff,

26  reviewing his Unit Health Record, and conferring with defendant Worrell (the supervising

15

1   psychologist), defendant Stabbe concluded that plaintiff's mental illness was not sufficiently

2   severe to require indefinite single-cell housing and that plaintiff's difficulty in accepting a

3   cellmate was not rooted in severe mental illness. *Id.* ¶ 4, Ex. A.

4        Defendant Sullivan was plaintiff's primary mental health clinician from October 2010

5   through February 2011. MSJ, Sullivan Decl. ¶ 4. In that role, Sullivan was responsible for

6   determining whether there was any clinical basis for plaintiff's refusal to accept a cellmate. *Id.*

7   ¶ 6. Sullivan reviewed plaintiff's mental health records that had been compiled during his CSP-

8   SAC incarceration to determine whether he suffered from any mental health stressors or

9   concerns that would cause him to be a significant danger to himself or another inmate if he was

10  required to accept a cellmate. *Id.* During the period of time that Sullivan was plaintiff's primary

11  mental health clinician, he neither exhibited any overt symptoms that would have resulted in a

12  diagnosis of PTSD, nor actively sought treatment for PTSD. *Id.* Based upon her personal

13  observations of plaintiff's comments and behavior during treatment sessions, Sullivan concluded

14  that plaintiff would not, based solely on mental health factors, pose a threat to himself or another

15  inmate if one was assigned as his cellmate. *Id*. ¶ 11.

16       Between December 2010 and March 2011, defendant Ad-Seg Floor Officer Jochim made

17  several unsuccessful requests for plaintiff to comply with CDCR and CSP-SAC policies

18  governing double-cell inmate housing assignments. Jochim Decl. at ¶¶ 2-4, Exs. A, B. As a

19  result of his refusal to comply with the assignments, plaintiff received numerous Rules Violation

20  Reports, and was assessed several lengthy periods in the prison's Security Housing Unit, in

21  accordance with policies and procedures set forth in California Code of Regulations Title 15,

22  § 3269. Jochim Decl. ¶¶ 2, 3; Virga Decl. ¶ 9, Exs. B, E. During the period of time that

23  defendant Van Dusseldorp was plaintiff's Ad-Seg canteen officer, he submitted all of plaintiff's

24  requests for canteen items as written, unless the requested items had been restricted by the

25  correctional lieutenant who ruled on plaintiff's Rules Violation Reports. Van Dusseldorp Decl.

26  ¶ 6.

A mental health assessment dated November 30, 2011, reflects plaintiff's claims regarding "gladiator fights" and "sex perverts" at CSP-Corcoran.  Dckt. No. 76, Defs.' Ex. B, Attach 1.  In that assessment, the psychologist concluded that plaintiff's mental disorder "did not contribute" to his refusal to accept a cellmate, but acknowledged that mental health factors were "potentially involved."  *Id.*

Plaintiff maintains that because of the alleged trauma he experienced at CSP-Corcoran over twenty years ago, he fears he will attempt to kill his cellmate.  Defendants contend they are entitled to summary judgment because there is no evidence that forcing plaintiff to double-cell poses an excessive risk of harm to plaintiff's health or safety.  They contend that the undisputed facts negate any finding that plaintiff was objectively deprived of his constitutional right to live in a safe prison environment.

The record demonstrates that in December 2009, Dr. Steenman determined that PTSD was likely, and recommended one year of single-cell housing so that plaintiff would not have to be housed indefinitely in Ad-Seg for refusing cellmates.  Defendant Virga, acting through the ICC, decided to grant plaintiff single-cell status for only 30 days, subject to plaintiff's agreement to continue engaging in treatment sessions with mental health clinicians to assess whether further single-cell status was required.  MSJ, Virga Decl. ¶ 10.   It was not until October 2010, that plaintiff was ordered to double-cell.  Plaintiff insists that he was not and is not, a suitable candidate for double-celling, and warns that violence is inevitable if forced to double-cell.  Though plaintiff has been diagnosed with various mental health-related conditions, there is no evidence that the psychiatric concerns that prompted his 30-day single-cell assignment in January 2010, remain present.  Plaintiff has received extensive medical attention for his mental health needs, and none of his mental health clinicians have recommended further single-cell status.  *See*  Dckt. No. 76, Exs. B, C; MSJ, Sullivan Decl.; Macomber Decl. ¶ 9.  Thus, there is no genuine dispute as to whether plaintiff requires single-cell housing for medical or mental health reasons.  *See Anderson v. Zika*, No. C 11-04276 EJD PR, 2013 U.S. Dist. LEXIS 3639, at

1   *13-14 (N.D. Cal. Jan. 8, 2013) (no Eighth Amendment claim based on having to share a cell

2   absent a showing of how post traumatic stress disorder, or other mental illness, necessitated a

3   single cell).  Moreover, while it is clear the plaintiff does not want a cellmate he fails to submit

4   any evidence showing that double-celling will cause him to suffer any serious psychological or

5   physical injuries.  *Cf. Gonzalez v. Zika*, No. C. 11-5561 CW, 2012 U.S. Dist. LEXIS 138613, at

6   *29 (N.D. Cal. Sept. 26, 2012) (granting plaintiff's request for single-cell status based, in part,

7   on the documented medical and mental health problems experienced by plaintiff as the result of

8   being double-celled).  Plaintiff simply does not have an Eighth Amendment to a single cell

9   status.  *See Rhodes v. Chapman*, 452 U.S. at 349.

10         Plaintiff also claims he should be single-celled because in various Rules Violation

11  Reports, he has been deemed a threat to institutional safety and security, and because he

12  continues to threaten violence against a cellmate.  Dckt. No. 69 at 2-3.  However, single-cell

13  status is reserved for inmates with a history of in-cell abuse, a history of in-cell violence toward

14  a cell partner, or who have been victimized in-cell by another inmate.  MSJ, Macomber Decl.

15  ¶ 7 (citing Cal. Code Regs. tit. 15, § 3269).  Notwithstanding plaintiff's repeated threats of

16  violence, there is no evidence demonstrating that he has the requisite history of in-cell violence

17  or predatory behavior to justify a single-cell assignment.  While plaintiff's allegations regarding

18  his experiences at CSP-Corcoran may have suggested a need for single cell status then, plaintiff

19  fails to demonstrate how these "long past incidents" at "a different facilit[y]" entitle him to

20  single cell status now.  *See Lopez v. Hubbard*, No. Civ. S-09-1928 GEB GGH P, 2010 U.S. Dist.

21  LEXIS 104503 (E.D. Cal. Sept. 29, 2010) (granting defendants' motion for summary judgment

22  on plaintiff's claim that they denied him single-cell status, because "[o]ther than disagreeing

23  with the decision, plaintiff . . . failed to present any evidence to justify single cell status," and

24  merely "relie[d] on incidents in the 1980's and 1990's where he was assaulted").

25         Plaintiff claims that his continued retention in administrative segregation is

26  unconstitutional.  It is evident from the record, however, that his indefinite confinement there is

1   self-inflicted.  Notwithstanding plaintiff's purported fears, there is no evidence that sharing a cell

2   will expose him to a substantial risk of serious harm.  *See Evans v. Beck*, No. 1:12-cv-0284 AWI

3   MJS PC, 2012 U.S. Dist. LEXIS 143982, at * 9-10 (E.D. Cal. Oct. 3, 2012) (allegations that

4   defendants ordered plaintiff to double-cell despite plaintiff's documented single status at prior

5   facility because of plaintiff's violence against cellmates fail to suggest that plaintiff faced a

6   substantial risk of serious harm, given that violence was from "years past"  and "any threat was

7   posed by Plaintiff, not against Plaintiff").  Because plaintiff fails to create a triable issue as to

8   whether any defendant exposed him to a substantial risk of serious harm, defendants are entitled

9   to summary judgment.

10  **III.     Plaintiff's Motion to Reinstate Allegations Against Defendant McElroy**

11          Plaintiff voluntarily dismissed defendant McElroy from this action on July 18, 2011.

12  Dckt. No. 18.  Plaintiff explains that he did so after the two of them "came to an undisclosed

13  agreement."  Dckt. No. 62 at 2.  According to plaintiff, McElroy breached that agreement on

14  May 27, 2012.  Dckt. No. 62 at 3; *see also* Dckt. No. 75 (explaining that terms of agreement

15  included plaintiff's ability to possess a television).  To remedy McElroy's alleged breach of

16  contract, plaintiff asks that the court "reinstate" all of plaintiff previous allegations against

17  McElroy.  Dckt. No. 62 at 3.

18          Plaintiff's motion is procedurally and substantively deficient.  First, neither the Federal

19  Rules of Civil Procedure nor the court's Local Rules provide for a motion to "reinstate"

20  allegations of a complaint.  Second, this lawsuit is not the appropriate forum for a breach of

21  contract claim against McElroy.  Plaintiff dismissed McElroy from this lawsuit over a year ago.

22  *See* Dckt. No. 18.  Discovery is now closed and a dispositive motion is pending before the court.

23  *See* Dckt. Nos. 27, 66.  Plaintiff fails to demonstrate good cause for allowing him to set aside the

24  dismissal and proceed in this action with claims against McElroy.  Accordingly, plaintiff's

25  motion must be denied.

26  ////

**IV.     Plaintiff's Motions for Injunctive Relief**

Plaintiff has filed various requests for injunctive relief, some of which relate to the merits of this action, others which do not.  *See* Dckt. Nos. 54, 63, 64, 81.  To be entitled to injunctive relief, the plaintiff must demonstrate "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008)). A plaintiff seeking injunctive relief "must establish that irreparable harm is likely, not just possible."  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (citing *Winter*, 555 U.S. at 20–21); *see also Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931) ("Injunction issues to prevent existing or presently threatened injuries. One will not be granted against something merely feared as liable to occur at some indefinite time in the future.").  In cases brought by prisoners involving conditions of confinement, any preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm."  18 U.S.C. § 3626(a)(2).  For the reason discussed at length above, plaintiff not only fails to show probable success on the merits but defendants are entitled to summary judgment.  Moreover, there is no evidence demonstrating that plaintiff will suffer irreparable harm in the absence of the requested relief.

**V.     Recommendation**

For the reasons stated above, it is hereby RECOMMENDED that:

1.  Plaintiff's motions to "reinstate" McElroy as a defendant (Dckt. Nos. 62, 75) be denied.

2.  Plaintiff's Rule 56(d) motion for further discovery (Dckt. No. 73) be denied.

3.  Plaintiff's motion to amend his opposition to defendants' motion for summary judgment (Dckt. No. 74) be denied.

4.  Defendants' motion for summary judgment (Dckt. No. 66) be granted and judgment entered in their favor;

5.  Plaintiff's motions for injunctive relief (Dckt. Nos. 54, 63, 64, 81) be denied; and

6.  The Clerk be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:  March 22, 2013.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE